Christopher H. Knauf, State Bar No. 185180
  *ck@goodlaw.biz*
Alexandra M. Robertson, State Bar No. 298637
  *alex@goodlaw.biz*
KNAUF ASSOCIATES
2001 Wilshire Blvd, Suite 305
Santa Monica, California 90403
Tel: (310) 829-4250 / Fax: (310) 622-7263

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTON STAMM, an individual,<br><br>   Plaintiff,<br>  v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, a California non-profit corporation; and DOES 1-10, inclusive,<br><br>   Defendants. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES; DEMAND FOR JURY TRIAL**<br>1. Americans With Disabilities Act (42 U.S.C. §§ 12181 *et seq.*);<br>2. Rehabilitation Act of 1973 (29 U.S.C. §§ 794 *et seq.*);<br>3. California Unruh Civil Rights Act (Cal. Civil Code §§ 51 *et seq.*);<br>4. Negligence/Negligence Per Se; |

---

COMPLAINT FOR DAMAGES

**INTRODUCTION**

Plaintiff AUSTON STAMM hereby alleges the following facts and submits the following claims for relief against Defendants UNIVERSITY OF SOUTHERN CALIFORNIA, and DOE Defendants 1 through 10:

1.      Plaintiff Auston Stamm is a recent graduate of Defendant University of Southern California ("USC" or the "University"), earning his Master's degree from Defendant's occupational therapy program. Mr. Stamm also has mild cerebral palsy, which results in difficulty with visual processing and tracking, as well as low muscle tone, resulting in poor posture, difficulty with fine motor skills, dysgraphia, and susceptibility to fatigue and exhaustion.

2.      Due to his disability, Mr. Stamm required certain academic accommodations for educational fieldwork for his Master's degree program at USC. USC administers, coordinates, and supervises this required component of its occupational therapy degree program.  Unfortunately, USC failed to coordinate Mr. Stamm's fieldwork accommodations during the summer of 2016, resulting in a full year delay of achieving his degree and beginning his career.

3.      Unable to resolve the matter informally, Mr. Stamm herein alleges that Defendants violated Title III of the Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12181 *et seq.*), Section 504 of the Rehabilitation Act ("Rehabilitation Act" or "Section 504") (29 U.S.C. §§ 794 *et seq.*), California's Unruh Civil Rights Act ("Unruh Act") (Cal. Civil Code §§ 51 *et seq.*), and committed common law negligence and negligence per se.  Mr. Stamm seeks damages, as well as declaratory and injunctive relief.

**JURISDICTION AND VENUE**

4.      As this action arises in part under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, this Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over

COMPLAINT FOR DAMAGES

1   Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

2        5.    Venue is proper in the Central District of California under 28 U.S.C.

3   § 1391(b), as Defendant is deemed to reside in this judicial district by virtue of its

4   business operations here, the events involving Plaintiff occurred in this judicial district,

5   and Defendant is subject to this court's jurisdiction with respect to this action.

6                                    **PARTIES**

7        6.    At all relevant times, Plaintiff AUSTON STAMM has resided in the

8   County of Los Angeles, State of California, and has had cerebral palsy, which is a

9   permanent life-long condition that substantially impairs his visual processing and

10  tracking, and muscle tone, resulting in low muscle tone, poor posture, difficulty with

11  fine motor skills, dysgraphia, and susceptibility to fatigue and exhaustion, impacting

12  many major life activities. By virtue of these impairments, Mr. Stamm at all relevant

13  times has been an "individual with a disability" within the meaning of the ADA,

14  Section 504, and California Government Code § 12926.

15       7.    At all relevant times, Defendant UNIVERSITY OF SOUTHERN

16  CALIFORNIA ("USC") has been a California non-profit corporation headquartered in

17  the County of Los Angeles, State of California, and provided educational programs to

18  qualified members of the general public admitted to the university. At all relevant

19  times, USC's occupational therapy Master's degree program has required students to

20  earn certain credits in clinical practice settings in order to complete their degrees. As

21  part of this required component of its curriculum, USC's occupational therapy program

22  has administered clinical fieldwork placements (including internships) and coordinated

23  with outside entities to organize and supervise its students at these outside clinical

24  sites. At all relevant times, USC has been a "public accommodation" within the

25  meaning of the ADA (42 U.S.C. §12182) and a "business establishment" within the

26  meaning of the Unruh Civil Rights Act (Cal. Civ. Code § 51), offering educational

27  programs for payment. At all relevant times, USC has received federal funding and

28  been subject to Section 504 (29 U.S.C. § 794).

8.   The identities of Defendants DOES 1 through 10 are unknown at this time. DOES 1 through 10 are individuals or entities who are in some manner responsible for the violations of law alleged by Plaintiff.  Plaintiff will amend this Complaint when their identities become known.

9.   At all relevant times, all Defendants and each of them were acting in concert with each other and were the agent, principal, subsidiary, representative, alter ego, officer, employer, employee, manager, director, shareholder, partner, co-conspirator, aider and abettor, and fiduciary in proximately causing the injuries and damages alleged herein.

10.   At all relevant times, all Defendants and each of them were legally responsible to Plaintiff for each of their co-Defendant's wrongs, acts and omissions alleged herein as though they had each committed each act themselves, and at all times authorized, directed, and ratified the acts and omissions of each remaining Defendant.

## ADDITIONAL FACTS COMMON TO ALL CLAIMS

11.   At all relevant times, Mr. Stamm was a graduate student qualified for and enrolled in USC's occupational therapy Master's degree program.

12.   Prior to enrolling in Defendant's degree program, Mr. Stamm had a long history of receiving reasonable accommodations as a result of his cerebral palsy. He had been assessed by doctors and specialists, who identified his disability and necessary accommodations.  According to his assessments, Mr. Stamm's accommodations in classroom coursework included, but were not limited to:

      a.   Use of a computer for lectures and essays;

      b.   Double time on exams;

      c.   Circling answers in test booklet on exams;

      d.   Use of a word processor for exams.

13.   As an undergraduate enrolled at Loyola Marymount University in Los Angeles, Mr. Stamm received reasonable academic accommodations. With the aid of these accommodations, Mr. Stamm successfully completed his Bachelor's Degree with

a high grade point average.

14.     Before beginning the occupational therapy Master's degree program at USC, Mr. Stamm underwent extensive evaluation of his ability to work as an occupational therapist by California's Department of Rehabilitation ("DOR"). This included a simulated assessment of his ability to perform in clinical practice, which he passed with flying colors. DOR determined that Mr. Stamm had the capability to perform the essential work functions of an occupational therapist, and thus was qualified to train in this career path and receive financial assistance.

15.     Mr. Stamm enrolled in USC's occupational therapy degree program in January 2015 and began coursework with the purpose of earning a Master's degree. He intended to pursue a career as an occupational therapist so that he could provide therapy to others, just as he himself had benefitted from occupational therapy as a child with cerebral palsy.

16.     At the time Mr. Stamm enrolled at USC, he registered with USC's Office of Disability Services and Programs ("DSP") and requested disability accommodations, completing all required paperwork and submitting medical documentation verifying his disability and necessary accommodations.

17.     USC granted Mr. Stamm's requested academic accommodations for the classroom and exams.  With the provision of accommodations, Mr. Stamm earned "A" and "B" grades throughout his USC courses.

18.     In approximately the fall 2015 semester, Mr. Stamm began to participate in the fieldwork portion of his program, including clinical internships and practice immersions, which are required components to complete USC's occupational therapy Master's degree. This portion of USC's program is administered and coordinated by the occupational therapy program's fieldwork department and includes placement in third-party clinical sites (such as hospitals or treatment facilities) to receive required credits towards a Master's degree in occupational therapy.

19.     Although he was successful in USC's occupational therapy coursework with the aid of his reasonable academic accommodations, Mr. Stamm experienced

COMPLAINT FOR DAMAGES

difficulties receiving needed accommodations in the occupational therapy fieldwork portion of his degree program.  For all fieldwork, Mr. Stamm engaged USC and his internship sites in the interactive process to receive his accommodations.

20.    In or about late February 2016, Mr. Stamm met with occupational therapy program faculty and DSP personnel to ensure that the accommodations for clinical fieldwork were formally approved by the University and would be provided at all internships and clinical practice placements. During this meeting USC faculty and/or personnel acknowledged that USC would need to play an active role in placing Mr. Stamm in appropriate internships with his needed accommodations.

21.    By the end of February 2016, USC's occupational therapy program and DSP had approved the following accommodations for Mr. Stamm's fieldwork:

    a.  An internship placement that is within 20 minutes by car from where he lived;

    b.  An internship placement that is more sedentary and involves less standing to prevent fatigue;

    c.  An internship placement that allows some form of electronic documentation, and working with DSP to explore assistive technology;

    d.  Strategies to help with remembering details in the setting; and

    e.  USC's occupational therapy program would identify sites for internship placements that would be able to provide the above accommodations.

22.    During summer 2016, USC 's occupational fieldwork department placed Mr. Stamm at Exodus Recovery, located in Culver City, California. This internship was for academic credit required by USC's occupational therapy Master's degree program.

23.    Mr. Stamm began a twelve-week USC internship at Exodus in or about May of 2016.  Although USC approved Mr. Stamm's fieldwork accommodations, USC failed to ensure that Mr. Stamm was provided the needed accommodations by the internship site, or by intervention by the University's occupational therapy faculty, fieldwork coordinators, or DSP.

24.    Although Mr. Stamm had informed USC faculty and other personnel immediately regarding the failure to accommodate and other discrimination he faced at his internship, and he continued to follow up with USC faculty and personnel, he is informed, believes, and based thereon alleges that there was no intervention by USC whatsoever regarding implementation of his accommodations at Exodus.

25.    In or about July 2016, Mr. Stamm was terminated from his internship.  The failure to implement the accommodations resulted in Mr. Stamm's unjustified and discriminatory dismissal from the internship.

26.    Mr. Stamm continued to follow up with USC occupational therapy faculty and DSP personnel to seek a fair resolution following the unsuccessful internship. However, USC failed to provide him with any remedial action, alternative to complete the internship, or any other action to receive full or partial credit for the time he had worked at the Exodus internship.

27.    As a consequence, Mr. Stamm did not receive academic credit for the internship, forcing him to complete a different twelve-week internship to fulfill this required credit. This in turn delayed Mr. Stamm's completion of his Master's Degree in occupational therapy, as well as beginning his career, for one full year.

28.    Mr. Stamm experienced significant humiliation, anxiety, anguish and emotional distress due to the lack of needed accommodations and support from the University; the discriminatory critiques of his work performance and the University's failure to intercede; and his unjustified and discriminatory termination from the Exodus internship.

29.    In addition, Defendant effectively required Mr. Stamm to incur additional educational expenses, as well as delayed his completion of his degree and beginning of his career, which impacts his future earnings.

30.    Mr. Stamm continued to persevere and work toward completing his Master's degree in occupational therapy. By December 2017, he successfully completed all requirements, including an additional clinical internship to complete the credits he did not receive for his time and work at Exodus.

31.   Despite his success in completing his degree, Mr. Stamm's USC transcript lists the terminated 2016 clinical internship at Exodus as a course for which he did not receive credit.  Mr. Stamm is informed, believes, and based thereon alleges that the record could affect future employment prospects.  Accordingly, he seeks injunctive relief to modify his transcript to eliminate any adverse impact on his academic record resulting from the unaccommodated internship.

## FIRST CLAIM FOR RELIEF

### Violation of Title III of the Americans with Disabilities Act
### 42 U.S.C. §§ 12181 *et seq*.

32.   Plaintiff re-alleges and incorporates by reference all previous paragraphs.

33.   Congress enacted the Americans with Disabilities Act upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem."  42 U.S.C. §12101(a)(2).

34.   In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1)-(2).

35.   Title III of the ADA provides in pertinent part:   "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. §12182.

36.   Title III prohibits denial of participation on the basis of disability, providing in pertinent part that "[i]t shall be discriminatory to subject an individual … on the basis of a disability …, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual … to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations

COMPLAINT FOR DAMAGES

of an entity." 42 U.S.C. § 12182 (b)(1)(A)(i); *see also* 28 C.F.R. § 36.202 (a).

37.    Title III prohibits participation in an unequal benefit on the basis of disability, providing in pertinent part that "[i]t shall be discriminatory to afford an individual … on the basis of a disability …, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182 (b)(1)(A)(ii); *see also* 28 C.F.R. § 36.202 (b).

38.    Significantly, Title III prohibits discrimination through administrative methods, mandating that public accommodations "shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration … that have the effect of discriminating on the basis of disability; or … that perpetuate the discrimination of others who are subject to common administrative control. 42 U.S.C. § 12182(b)(1)(D); *see also* 28 C.F.R. § 36.204.

39.    Title III of the ADA defines discrimination on the basis of disability to include "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A) (ii); *see also* 28 C.F.R. 36. 302(a).

40.    Title III of the ADA further defines discrimination on the basis of disability to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii); *see also* 28 C.F.R. 36. 303(a).

41.   At all relevant times, Defendant has been a "public accommodation" or a person who "owns, leases (or leases to), or operates a place of public accommodation" within the meaning of Title III of the ADA and offered educational services, programs, and activities, to members of the public who qualify and pay for its programs.

42.   At all relevant times, Mr. Stamm has been an individual with a disability within the meaning of Title III of the ADA and has met the eligibility requirements for the receipt of the aids, benefits, services, programs, and activities of Defendant's occupational therapy Master's degree program, as well as at his internship at Exodus at issue in this action.

43.   Plaintiff is informed, believes, and based thereon alleges that Defendant could have reasonably provided all aids, benefits, services, programs, and activities in an accessible manner and on an equal basis to allow him a full, meaningful, and substantially equal opportunity to participate in Defendant's program.

44.   As a direct and proximate result of the aforementioned acts, Plaintiff has suffered humiliation, hardship, anxiety, indignity, and other significant mental and emotional anguish.

45.   Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to his reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Violation of Section 504 of the Rehabilitation Act of 1973

### 29 U.S.C. § 794

46.   Plaintiff re-alleges and incorporates by reference all previous paragraphs.

47.   Section 504 of the Rehabilitation Act ("Section 504") provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. . . ."  29 U.S.C. §794.

48.   The U.S. Department of Justice's regulations implementing Section 504 prohibit a recipient of federal funds from "[d]eny[ing] a qualified handicapped person

the opportunity to participate in or benefit from the aid, benefit, or service" 34 C.F.R. § 104.4(b)(1)(i); *see also* 34 C.F.R. § 104.43 (a).

49.    The U.S. Department of Justice's regulations implementing Section 504 further prohibit a recipient of federal funds from "[a]fford[ing] a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others" 34 C.F.R. § 104.4(b)(1)(ii); *see also* 34 C.F.R. § 104.43 (a).

50.    The U.S. Department of Justice's regulations implementing Section 504 mandate, in relevant part, that an educational program receiving federal funding "shall make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped … student." 34 C.F.R. § 104.44(a).

51.    The U.S. Department of Justice's regulations implementing Section 504 also mandate that an educational program receiving federal funding "shall take such steps as are necessary to ensure that no handicapped student is denied the benefits of, excluded from participation in, or otherwise subjected to discrimination because of the absence of educational auxiliary aids for students with impaired sensory, manual, or speaking skills." 34 C.F.R. § 104.44(d)(1).

52.    The U.S. Department of Justice's regulations implementing Section 504 prohibit a recipient of federal funding from discriminatory administrative methods, providing in relevant part:  "A recipient may not, directly or through contractual or other arrangements, utilize[ing] criteria or methods of administration … that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, … that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons, or … that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control." 34 C.F.R. § 104.4 (b)(4)(i)-(iii).

53.     The U.S. Department of Justice's regulations implementing Section 504 mandate that an educational program receiving federal funding that "considers participation by students in education programs or activities not operated wholly by the recipient as part of, or equivalent to, and education program or activity operated by the recipient shall assure itself that the other education program or activity, as a whole, provides an equal opportunity for the participation of qualified handicapped persons." 34 C.F.R. § 104.43 (b).

54.     At all relevant times, Mr. Stamm has been a qualified individual with a disability (also referred to as a "handicapped person") within the meaning of Section 504.

55.     At all relevant times, Mr. Stamm has met the eligibility requirements for the receipt of the aids, benefits, services, programs, and activities of Defendant's occupational therapy Master's degree program, as well as at his internship at Exodus at issue in this action.

56.     At all times relevant to this action, Defendant has been a recipient of federal financial assistance within the meaning of Section 504.

57.     Through their acts and omissions described herein, Defendant has violated Section 504 and its implementing regulations.

58.     Plaintiff is informed, believes, and based thereon alleges that Defendant committed the acts and omissions alleged herein with intent, deliberate indifference, and/or reckless disregard of Plaintiff's rights.

59.     As described herein, Plaintiff was harmed by the resulting delay in his completion of Defendant's occupational therapy Master's degree program and delay in his career, and Defendant's discriminatory conduct were substantial factors in causing this harm.

60.     In addition, as a direct and proximate result of the aforementioned acts, Plaintiff has suffered humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish.

61.     As a direct and proximate result of the aforementioned acts, Plaintiff has

COMPLAINT FOR DAMAGES

suffered actual damages including but not limited to lost income, lost future earnings, additional educational expenses, out of pocket costs, humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish.

62.     Pursuant to 29 U.S.C. § 794a, Plaintiff is entitled to damages and reasonable attorneys' fees and costs incurred in bringing this action.

### THIRD CLAIM FOR RELIEF

**Unruh Civil Rights Act**

**Cal. Civ. Code §§ 51 *et seq.***

63.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

64.     California's Unruh Civil Rights Act provides:

> All persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability [or] medical condition, are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.
>
> Cal. Civ. Code § 51(b).

65.     Violation of a right protected by the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f).

66.     At all relevant times, Defendant has owned, and/or operated a "business establishment" within the meaning of the Unruh Act.

67.     Through its acts and omissions described herein, Defendant has denied Plaintiff full and equal accommodations, advantages, facilities, privileges, or services by discriminatorily failing to provide or ensure the provision of reasonable accommodations for Plaintiff's disability or medical condition during its occupational therapy internship program; by failing to ensure that Plaintiff was not discriminated against based on the characteristics of his disability during its occupational therapy internship program; and by determining to terminate Plaintiff's internship and/or permitting the third-party site to terminate Plaintiff's internship without providing Plaintiff any alternative.

68.    Plaintiff is informed, believes, and based thereon alleges that a motivating reason for Defendant's discriminatory was Plaintiff's disability or medical condition.

69.    By virtue of the acts and omissions alleged herein, Defendant has, with intent, deliberate indifference, and/or reckless disregard, failed to provide Plaintiff with full and equal accommodations, advantages, facilities, privileges, and/or services, and discriminated against Plaintiff due to his disability and medical condition, and as such, Defendant has violated the Unruh Act.

70.    As described herein, Plaintiff was harmed by the resulting delay in his completion of Defendant's occupational therapy Master's degree program and delay in his career, as well as his subsequent emotional distress, and Defendant's discriminatory conduct were substantial factors in causing this harm.

71.    As a direct and proximate result of the aforementioned acts, Plaintiff has suffered actual damages including but not limited to lost income, lost future earnings, additional educational expenses, and other out-of-pocket costs, as well as humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish.

72.    Defendant is liable for each and every violation of the Unruh Act for Plaintiff's actual damages, including emotional distress, and any amount that may be determined by the court, up to a maximum of three times the amount of actual damage, including emotional distress, but in no case less than $4,000 per violation. Plaintiff is also entitled to reasonable attorneys' fees and costs. Cal. Civ. Code § 52(a).

## FOURTH CLAIM FOR RELIEF
### Negligence & Negligence Per Se

73.    Plaintiff re-alleges and incorporates by reference all previous paragraphs.

74.    At all relevant times, Defendant owed a duty of due care to Plaintiff.

75.    By its acts and omissions as alleged herein, Defendant violated the ADA, Section 504, and the Unruh Act and breached its duty of due care to Plaintiff.

76.    Defendant's violations of law proximately caused, and were a substantial factor in causing, Plaintiff's damages as alleged herein. Such damages were reasonably foreseeable to Defendants.

77.   Plaintiff's damages resulted from an occurrence, the nature of which the violated statutes and regulations were designed to prevent.

78.   At all relevant times, Plaintiff has belonged to the class of persons for whose protection the statutes and regulations were adopted.

79.   Plaintiff is entitled to an award of damages in an amount according to proof as a result of Defendant's conduct, as alleged herein.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for relief as follows:

1.   For a declaration that Defendant's conduct as alleged herein constituted a violation of the Americans with Disabilities Act, the Rehabilitation Act, and California's Unruh Civil Rights Act;

2.    For an order requiring Defendant to rectify Mr. Stamm's academic transcript regarding the summer 2016 clinical internship;

3.   For statutory and compensatory damages as permitted by law and according to proof at trial, including treble actual damages pursuant to Cal. Civ. Code § 52(a);

4.   Interest on compensatory damages at the legal rate from the date of injury, pursuant to California Civil Code § 3291;

5.   Attorneys' fees and costs of suit as permitted by law, pursuant to 42 U.S.C. § 12188, 42 U.S.C. § 12205, 29 U.S.C. § 794a, Cal. Civ. Code § 52(a), and Cal. Code Civ. Proc. § 1021.5, and

6.   Such other relief as the Court finds just and proper.

Dated:  July 3, 2018                          KNAUF ASSOCIATES

By: Christopher H. Knauf
Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated:  July 3, 2018                                      KNAUF ASSOCIATIES

                                              _____
                                              By: Christopher H. Knauf
                                              Attorneys for Plaintiff